UNITED STATES *v.* VIETOR & ACHELIS (No. 2931) [1]

[1] T. D. 42463.

United States Court of Customs Appeals, November 4, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Reuben Wilson*, special attorneys, of counsel), for the United States.
*B. A. Levett* for appellee.

[Oral argument October 3, 1927, by Mr. Igstaedter and Mr. Levett]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importers are the consignees of certain hat plush manufactured in Germany. In February, 1925, a representative of the importers went to Lobberich, Germany, and made an unwritten contract with the manufacturers for the manufacture of a special type of hat plush which was to be known as quality 5305, and which was to be manufactured for, and sold only by, the importers. The first shipment of this particular quality was received by the importers in April, 1925, and various importations have been since received, those involved in the present proceeding being six entries numbered 918840, 889544, 910439, 901480, 726281 and 736472.

Part of the entries were made at the cost of production, less certain nondutiable charges, and part upon alleged United States values, all as hereinafter more specifically detailed. The local appraiser ascertained, through the reports of customs representatives abroad and, probably, through other sources, that quality 5305 was not sold in the principal markets of Germany, but that the foreign manufacturers produced and sold there a hatters' plush known as quality 5400, which was reported to be used for similar purposes to those of quality 5305. It was also shown by these reports, and appears by the record before us, that this quality 5400 hatters' plush was of a superior quality and cost approximately 10 per cent more to produce than did quality 5305. The appraiser thereupon found the said quality 5400 to be comparable with quality 5305 by deducting 10 per centum of the cost price of said quality 5400. He thereupon appraised the foreign market value of quality 5305 at 90 per centum of the foreign market value of quality 5400, less such deductions as were allowed by law, and which are not questioned in this case.

Mr. Chief Justice Howell, on appeal to reappraisement, sustained the appraised values in each case. On further appeal to the Customs Court, the First Division thereof reversed the reappraisement and entered judgment sustaining the entered values. In so doing, it made the following specific findings of fact:

Without entering into niceties and deductions as to whether or not it is comparable to an article that is not similar in fact, is not the same material, and is of a different weave, we feel the importers have sustained the burden of proof,

and established that the merchandise falls within the United States value, as stated in subdivision (d), and as that represents the entered value we so find.

It is therefore the conclusion of the court:

(1) We find there was not a freely offered foreign market.

(2) There was not a freely offered export market.

(3) That the merchandise was especially manufactured for sale in the United States.

(4) That it was consigned to the importers.

(5) That the value at which it was entered was the United States value on the date of entry.

From that judgment the Government has appealed.

It is seriously contended by the Government that, irrespective of the merits of the principal controversy in this case, the judgment of the court below must be reversed, for two reasons: First, that the facts appearing from the record show that none of the entries involved were made upon United States values; second, that even if it may be found that some of such entries were made upon United States values, the court below has found that such values were the United States values *at the time of entry* instead of at the time of exportation, as is required by the statute in such cases.

An examination of the record and six entries in the case leaves the mind in very great doubt as to the exact method pursued in making these entries. Mr. Harry S. Radcliffe, a representative of the importers, testified, in effect, that those goods, entered in gold *marks* per meter, were entered at cost of production, while those entered in dollars per yard were entered in United States values. Further testimony of the witness was as follows:

Q. Now, when you first got this, it was entered, and the invoice showed in gold marks. How did you come to enter it in gold marks? How was the price fixed?—A. That price, the invoice erroneously stated, the first invoice erroneously stated that the prices were home-market values, but that was due to a clerical error, as I explained to the examiner at the time. The invoice price represented the cost of production.

Q. What happened then?—A. I consulted the examiner regarding it, and was informed that there was an investigation pending on the article of hat plush, and that, as far as the examiner was advised, we had better enter it as invoiced.

Q. Well, then, in due time you changed to United States currency. How did you come to do that?—A. In presenting a subsequent invoice for the advice of the examiner. Examiner Hart said the investigation showed the quality was not sold at home, and that we would take the United States value. So we entered thereafter on the United States value.

Q. And did you go over, with Mr. Hart at that time, figures to arrive at the price at which you should enter?—A. Yes; whether it was on that first invoice that we entered on the United States value or not I do not know, but at least the second one I went over the figures with Mr. Hart.

Q. Now, how did you arrive at the figure at which you entered when you took the United States selling price?—A. By taking the prices at which we were selling then in wholesale quantities and deducting the cash commission, then 6 per cent for commission, and dividing the result and the quotient by 165, representing 60 per cent duty and 5 per cent expenses.

Judge HOWELL. You meant to say cash discount where you said a certain per cent cash commission?

The WITNESS. Yes, sir.

However, the invoices before us each state that the values therein given are "home-market values." Nor are we able to ascertain from the entries themselves upon just what bases they were made. Counsel for the parties, however, by their admissions here have rendered it unnecessary for us to attempt to decide this issue from the testimony of the witness Radcliffe or from an inspection of the papers. In the Government's brief it is stated:

In entries 726281 and 736472 the importers made entry on the basis of United States value, but on entries 889544, 901480, 910439, and 918840 the invoiced and entered prices were cost of production.

In appellee's reply brief it is stated:

As to the two which were entered on the basis of the United States value, namely, entries 726281 and 736472, there can be no question as to the propriety of affirming the court below should this court be of the opinion that the action of the court below in holding the United States value to be the proper dutiable value was correct. As to the remaining entries which were entered on the basis of cost of production it must be admitted that the court below should have made an additional finding modifying these figures if necessary to equal the entered value in the two entries first named. * * *

Taking the issue as thus made, it follows that the court below erred in finding that entries 918840, 889544, 910439, and 901480 had been made upon United States values. They were admittedly made upon cost of production, for which no basis is either claimed or to be found in this record.

As to the remaining entries, we are confronted by the finding of the court below that the values given therein are the United States values *at the time of entry*. The statute, section 402 (d), thus defines United States value:

(d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The court below found that the goods should be entered at their United States value. A finding of fact that they were entered at their value on the *date of entry* is not sufficient. Hence it follows that the court below erred, as a matter of law, in ordering a reversal of the single justice upon such a finding of fact.

It is insisted that this finding by the court below was an inadvertence and that the language used should be construed to read as "at the time of exportation." It may be such an inadvertence, but we are without power in this case to revise and reconstruct the findings of the court below—this it must do for itself.

In view of the errors above suggested, it is not desirable or necessary, at this time, to attempt to discuss the principal issues involved in this case. This may be done if the case again comes to us free of the errors indicated. The judgment of the court below will therefore be reversed and the cause remanded for further review, findings of fact, and reasons therefor.

*Reversed* and *remanded*.